UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DEMETRIUS S. RANKIN**                                                      **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO. 3:14cv272-HTW-LRA**

**UNITED STATES OF AMERICA, ET AL.**                          **DEFENDANTS**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the Defendants' Amended Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [49 & 51] and related filings in this case.[1] For the reasons explained below, the undersigned recommends that the motions be granted, and that this case should be dismissed with prejudice.

**I. PROCEDURAL HISTORY**

On the date he filed his Complaint, March 31, 2014, Demetrius S. Rankin [hereinafter "Plaintiff" or "Rankin"] was a federal inmate incarcerated at the Federal Correctional Complex ("FCC") located in Yazoo City, Mississippi. He has since been released, and he notified the Court of his new address by letter dated May 20, 2015, filed on June 8, 2015.

Plaintiff filed this action under 28 U.S.C. § 1331, seeking recovery of damages against defendants pursuant to the theory of *Bivens v. Six Unknown Named Agents of the*

---

[1] The original Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [29 & 31] were amended because these pleadings inadvertently omitted naming the United States specifically. These motions were dismissed as moot after the amended motions were filed. See Text Only Order dated July 14, 2015. The moving Defendants are Jack Joiner, Devan Strange, Hastings Williams, and the United States of America.

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (allowing claims for damages against federal employees for violation of constitutional rights), and the Federal Tort Claims Act. He charged that he was housed at the Yazoo FCC in a housing unit which contained black mold on the walls and in the ceilings of the showers.  A storm occurred on October 12, 2011, and it damaged the water sealant on the Unit A roof, where Plaintiff was housed. He acknowledged that repairs were made but claims that they were insufficient to correct the mold problem.  As a result, Plaintiff contends he suffered from various health problems due to the mold, including nasal polyps, nose bleeds, congestion, headaches, sinus infections, running nose, respiratory problems, and skin disease. [1, p. 5].  He also charges that he has suffered from sleepless nights, physical and emotional trauma, embarrassment and humiliation as a result. [1, p. 13].  According to Plaintiff, these Defendants denied him proper medical care by not allowing him to be referred to a "doctor of environmental and occupational medicine with a specialty in mold-caused illnesses." [1, p. 15].  The individual Defendants violated his "right to be free from cruel and unusual living conditions of confinement and to equal protection of the law under the Fifth and Eighth Amendments." [1, p. 9].  Plaintiff charges these Defendants were "put on notice" of a mold analysis report generated by Pro-Lab/SSPTM Inc. [1, p. 7] and deliberately were indifferent to the necessary repairs that should have been made.

     Plaintiff names the United States of America as a Defendant, along with individual Defendants, who are current and former employees of the Bureau of Prisons ("BOP").

The following individual Defendants have been served and counsel has entered an appearance on their behalf:

1. Jack J. Joiner
2. Hastings Williams
3. Devan Strange

Because Plaintiff did not originally provide addresses for the following individuals named as Defendants, they have not been served with process, and counsel has not entered an appearance on their behalf:

1. Bruce Pearson
2. Melissa Robinson
3. Leroy Pitts
4. Vid Parsans

Plaintiff has requested that these individuals be served by the United States Marshal. The United States objects to these individual Defendants being served with process because the 120-day time for service under Rule 4(m) of the Federal Rules of Civil Procedure expired on July 28, 2014. Plaintiff requested service on these remaining Defendants prior to the expiration of the 120 days, and the United States' objection to service on this basis should be overruled.

The United States requested to withdraw its Motion to Dismiss for Lack of Subject Matter Jurisdiction [40] regarding Plaintiff's claims under the Federal Tort Claims Act, and that motion was granted by Text Only Order entered December 8, 2014. The dispositive motion filed on November 4, 2014 [33] by the United States of America

requested that the FTCA claims be dismissed as untimely under 28 U.S.C. § 2401(b). These FTCA claims are not now before the Court.

Defendants filed the instant motion and attached their supporting exhibits, including the sworn Declarations of Jack J. Joiner (Exhibit 1 & Exhibits A & B to Joiner Declaration); Hastings Williams (Exhibit 2); Devan Strange (Exhibit 3); and Dr. Anthony Chambers (Exhibit 4) [29-1 through 29-6, Exhibits to initial motion].

According to the Declaration of Mr. Joiner, dated August 27, 2014, he is the Environmental Health and Safety Compliance Administrator at the FCC in Yazoo City. The Safety Department sprays all areas of the FCC which have a proclivity for mold or mildew growth with Tilex and bleach. BioShield is also applied to most surfaces. BioShield is a cleaning agent that provides antimicrobial protection against mold and mildew, as well as other bacterial or viral microbial. In response to inmate inquiries in Unit A, Mr. Joiner attests that he ordered a mold analysis, and the result was the mold analysis report referred to by Plaintiff in his Complaint. According to Mr. Joiner, this report actually concluded that there was no toxic black mold in Rankin's housing unit. Further, the mold that was in the unit was cladosporium mold, a non-toxic mold that is "probably the most common spore type in the air worldwide." [29-1, p. 3].

Mr. Joiner further attests that he retained an independent contractor for the purpose of evaluating the HVAC units and duct system at the prison. These findings [Exhibit B to his Declaration] confirmed that stated in the earlier mold analysis report. The contractor recommended a thorough cleaning of the HVAC system, and this cleaning was performed

by the Facilities Department.  Based upon his experience, Mr. Joiner avers that it is nearly impossible to eradicate all mold from an inmate housing unit, although his department strives to minimize the presence and growth of mold.

Mr. Joiner also was familiar with the Unit A roof damage that occurred during an October 12, 2011, storm.  The Safety Department monitored the roof and crawl space for mold growth, and there was no mold growth or excess moisture during that time.  While repairs were made, rain affected ceiling tiles, and the staff worked to replace the tiles.

Defendants presented the Declaration of Hastings Williams, employed at the Bureau as a General Foreman in the Facilities Department at the Yazoo FCC.  [Exhibit 2, 29-4].  He was responsible for the overall general repair and maintenance of the mechanical, structural and other physical aspects of the low-security institution.  He supervised repairs and remodeling and preventative maintenance within Yazoo FCC.  He was familiar with the October 12, 2011, storm referred to by Plaintiff, which damaged the water sealant on the Unit A roof.  Within hours of the damage, Mr. Williams asserts that a temporary plastic cover was placed over the space to prevent water from leaking into the housing unit.  The damage was evaluated by staff the next day and emergency funding was requested.  It was approved on the following day, and by April 2012, the roof and water sealant over Unit A were totally repaired.  Mr. Williams observed only small amounts of water leaking from the roof to the ceiling tiles in the housing unit while repairs were being made.  Ceiling tiles were replaced as this occurred.  He never observed mold growth in the area between the ceiling and the roof of Unit A.

In support of the dispositive motion, Defendants also presented the Declaration of Devan Strange, dated August 28, 2014. [Exhibit 3, 29-5]. Mr. Strange is the Assistant Food Service Administrator at the Yazoo FCC, having previously served as a Safety Compliance Specialist there. As a Safety Compliance officer, in June 2011, he gathered mold samples from Unit A and sent them for processing to Pro Lab/SSPTM, Inc., at the direction of his supervisor, Environmental Health and Safety Compliance Administrator Jack J. Joiner. He received the report back on July 1, 2011. According to Mr. Strange, the report showed that the samples tested positive for "cladosporium mold and non-sporulating fungi, both of which are non-toxic."

Defendants presented the Declaration of Dr. Anthony Chambers, dated October 3, 2014, who is employed by the Federal Bureau of Prisons as the Clinical Director for the Health Services Department at the FCC. [Exhibit 4, 29-6]. He is also an officer in the Public Health Service at FCC Yazoo. Dr. Chambers treated Rankin and reviewed his medical records for the period beginning January 15, 2009, through May 15, 2014. According to Dr. Chambers, Rankin does *not* have a history of asthma, respiratory complications or conditions associated with labored or troubled breathing, chronic headaches, or throat irritation.

Rankin did come to the clinic during sick call complaining of dermatitis, or acne, on ten occasions. His dermatological condition was associated with bacteria, and not mold exposure, according to Dr. Chambers. Rankin was treated with the medication Doxycycline Hyclate to treat his dermatological condition.

6

Rankin came to sick call seven times complaining of allergies or sinus infections. According to Dr. Chambers, Rankin has a history of chronic allergic rhinitis dating back to 2009, and this was treated with allergy medication. Dr. Chambers concluded that Rankin's rhinitis was not associated with mold exposure or a fungal infection, which are typically treated with anti-fungal medication.

Rankin was treated during sick call eight times when he complained of eye swelling or irritation, including chalazions (subcutaneous cysts under the eye lid) in his eyes. Dr. Chambers attested that these were chronic and were associated with bacterial infections. The infections, treated with antibiotics, were caused by bacteria, and are not associated with mold exposure or a fungal infection.

Rankin presented during sick call on one occasion, on November 20, 2014, complaining of nosebleeds, dermatitis, and nasal polyps. His general respiratory exam was unremarkable, and he was prescribed a nasal inhaler. Dr. Chambers concluded that Rankin's nasal medical issues were attributable to his chronic allergic rhinitis, treated with allergy medication, and not mold exposure.

## II. STANDARD OF REVIEW

Defendants have moved for dismissal based upon Rule 12(b) of the Federal Rules of Civil Procedure, or, in the alternative, Rule 56. To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If matters outside the pleadings are presented to the Court on a motion under Rule 12(b)(6), the motion must be treated as

one for summary judgment under Rule 56.  However, if the supporting documents for the motion to dismiss are "referred to in the plaintiff's complaint and ... central to [his] claim," they are considered part of the pleadings for purposes of a motion under Rule 12(b)(6).  *Causey v. Sewell Cadillac-Chevrolet, Inc*., 398 F.3d 285, 288 (5th Cir. 2004).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In response to a motion for summary judgment, the non-moving party must provide specific proof demonstrating a triable issue of fact as to each of the elements required to establish the claim asserted.  *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122–23 (5th Cir. 1988).  The court must resolve all reasonable doubts about the existence of a genuine issue of material fact against the movant.  *Byrd v. Roadway Express, Inc*., 687 F.2d 85, 87 (5th Cir. 1982).   Because the undersigned has considered the affidavits of Plaintiff, his inmate witnesses, the individual Defendants and Dr. Chambers, as well as the mold report and medical records, the summary judgment standard shall be used in analysis of this case instead of the standard used for Rule 12(b)(6).

### III.  DISCUSSION

A.     *Bivens/*Constitutional Claims

Plaintiff's primary complaint is that the conditions under which he was housed at FCC violated his Eighth Amendment right to be free from cruel and unusual punishment. Further, he contends that he was denied constitutionally adequate medical care, as required by the Eighth Amendment.

*Bivens* "established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980).  This right of action applies only against the individual officials in their individual capacities. *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368 (5th Cir. 1987).  The individual federal official is entitled to qualified immunity unless the allegations in the complaint establish a violation of a constitutional right that was clearly established at the time of the alleged misconduct.  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s] [are] entitled to dismissal on that basis."  *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1995)(citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)).  Thus, if the Court finds that Plaintiff's *Bivens'* claims are not cognizable as constitutional claims, it need not reach the question whether Defendants are entitled to immunity.  *Id*.

Harsh "conditions of confinement" may constitute cruel and unusual punishment unless such conditions are "part of the penalty that criminal offenders pay for their offenses against society." *Whitley v. Albers*, 475 U.S. 312, 319 (1985) *quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Gillespie v. Crawford*, 833 F.2d 47, 50 (5th Cir. 1987). In order to successfully prove an Eighth Amendment conditions-of-confinement claim, a civil rights plaintiff must allege facts which suggest that the prison officials' conduct resulted in the plaintiff being incarcerated under "conditions which [posed] an unreasonable risk of damage to [the prisoner's] future health." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir.2001). This "risk must be of such a level that today's society would not tolerate it." *Id.* In order to prevail on such a conditions-of-confinement claim, a plaintiff must plead facts which establish: (1) objectively, that the deprivations are sufficiently serious; and (2) subjectively, that the defendant prison officials knew of the deprivations but nevertheless have shown a "deliberate indifference" to the plaintiff's "health or safety." *Id.*; *see also Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998).

A prisoner must show that the inflicting officer has exhibited "deliberate indifference" to the conditions. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Mere negligence does not satisfy the "deliberate indifference" standard. *Id.* The prisoner must suffer from an **extreme deprivation** of any "minimal civilized measure of life's necessities." *Id.* at 304. Like other Eighth Amendment claims, a conditions of confinement claim must satisfy tests for both the objective and subjective components. *Davis v. Scott*, 157 F.3 1003, 1006 (5th Cir. 1998), *citing Hudson v. McMillian*, 503 U.S.

10

1, 8 (1992). As the Court noted in *Davis*, since "[f]or the objective component, extreme deprivations are required to make out a conditions-of-confinements claim," and cannot be made, it is unnecessary to reach the subjective component.

In Plaintiff's case, neither the objective or subjective components of the deliberate indifference standard can be met. It is obvious that these prison officials were not attempting to punish Plaintiff by housing him in Unit A, or by the medical care the FCC provided him; he simply was not satisfied. The mold report provided by Defendants confirms that there simply was no black toxic mold at the prison; Plaintiff's conclusory allegations to the contrary simply cannot overcome the scientific report. Plaintiff himself points to the report, yet he fails to explain how the report supports his conclusions. He generally changed his allegations in the Complaint to conform with the report, recognizing the report's result. He also contends that the mold that was there was black by color, not necessarily the toxic kind referred to by Defendants. Plaintiff acknowledges in his response to the motion that there were other non-toxic molds identifiable in the report but contends that these conditions harmed him.

Defendant Williams attested that showers were replaced in Unit A to stop the problem of the deterioration of tile joints. After March 2011, half of the showers in Unit A were refloored, and the remaining are scheduled to be. During this work, shower walls were torn down, and no mold was discovered inside the cinder blocks. Small amounts of mold were found in the shower floors, in very small amounts and limited to the floors.

Plaintiff has not disproved or even disputed that this remedial work was performed; he simply charges that it was not enough.

Defendant Joiner attests that Tilex, bleach, and BioShield are regularly applied to all parts of the FCC which may have mold or mildew growth. Cleaning supplies are issued twice a month to all parts of FCC, and inmates may clean their own living areas. He also hired an independent contractor to evaluate the HVAC system and duct systems; a thorough cleaning was completed after the directions were recommended. Defendant Joiner also further explained the mold analysis report acquired after inmates complained about mold in Unit A. No stachybotrys mold, also known as black mold, was found in the unit— only cladosporium mold, which is non-toxic.

These actions defy any finding of deliberate indifference on the part of these Defendants to Plaintiff's health and safety. The FCC officials undertook steps to address the problems reported by FCC inmates and obtained a mold report. They made repairs in a timely manner and took additional cleaning steps. In rebuttal, Plaintiff has presented several affidavits from other inmates, as well as portions of his medical records in defense of the dispositive motion [44]. He attests that the presence of environmental toxins, such as "Cladosporium, Aspergillus/Penicillium molds," are sufficient to defeat dismissal. He asserts that he was forced to live in the wet conditions from August 2011 until March or April of 2012, when the roof was replaced. Until that time, tarps were used when the roof leaked. The conditions existed for this six-month period.

As proof of his allegations, Plaintiff presented the sworn Declaration of Steven Maisenbacher, an inmate who was housed in Unit B-4 at FCC Yazoo [44-8], and the Declaration of Steven Langford, an inmate who was housed in Unit B-3 [44-7].  These inmates attest that the HVAC systems were not working properly; that "visible black mold" was presented through the housing unit buildings, and that they saw other inmates suffer from illnesses as a result of the conditions.  The undersigned notes that neither affiant was housed in Unit A, where Plaintiff was housed.  Plaintiff also attached portions of his own medical records to confirm that he was treated for the illnesses he described.  The records do not conflict with those referred to and explained by Dr. Chambers.

In the undersigned's opinion, Plaintiff has not rebutted Defendants' supporting evidence by his rebuttal affidavits.  Plaintiff and his affiants only present conclusory allegations that mold was present and that Defendants' remedial actions were not enough to prevent illnesses.  Without presented medical proof or support, Maisenbacher, Langford, and Plaintiff simply conclude that various illnesses were caused by the conditions in the FCC.  They only address the assertions contained in Dr. Chambers's affidavit with their unsupported conclusions that Plaintiff's illnesses (as well as other inmates' illnesses) were caused by poor conditions.  Yet "conclusory allegations" are not enough to show a real controversy regarding materials facts.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).  Neither are unsubstantiated assertions.  *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994).

Defendants admit that a non-toxic mold was present in the FCC Yazoo for a period of time. Remedial measures were taken, and funding was acquired for repairs, after complaints were made. The initial problems were caused by storm damage. Yet, the fact that mold did exist at the prison does not support a finding of cruel and inhuman treatment so as to violate the Constitution, as Plaintiff suggests. Although Plaintiff claimed in the Complaint that it was black mold, the scientific report disputes his assertion, and he has not put forth evidence in rebuttal. On pages 2-3 of their Reply [58], Defendants cite many cases wherein courts in this district have rejected claims based upon black mold claims. *See, e.g., Eaton v. Magee*, Civil No. 2:10cv112MTP, 2012 WL 2459398 (S.D. Miss. June 27, 2012) (granting summary judgment on black mold claims); *Halthon v. Broadus*, Civil No. 1:08cv48-HSO-JMR, 2010 WL 376830 (S.D. Miss. Jan. 26, 2010) (same); *Samiia v. Allison*, Civil No. 1:09cv1970HSO-JWR, 2010 WL 4225887 (S.D. Miss. Sept.2, 2010) (same); *Causey v. Allison*, Civil No. 1:08cv155-RHW, 2008 WL 4191746 (S.D. Miss. Sept. 9, 2008) (granting motion to dismiss black mold claims and finding them frivolous under the PLRA). *See also Tipps v. Leonard*, 328 Fed. App'x 302, 303 (5th Cir. 2009) (prisoner claiming exposure to mold, lead paint, and asbestos must show deliberate indifference to prevail on an Eighth Amendment claim).

Again, in the undersigned's opinion, the conditions of FCC Unit A, for the six-month period after storm damage, are simply not so deplorable so as to violate this Plaintiff's Eighth Amendment rights. Storm damage is unavoidable. The repairs may not have been made to Plaintiff's satisfaction, but they continued as funding was obtained.

Mold and bacteria are nearly impossible to prevent in a prison setting, and inmates are provided cleaning products at least twice a month for them to use in their living space. These conditions were not so deplorable as to pose an unreasonable risk of damage to this Plaintiff's health and welfare.

Plaintiff contends that he suffered physical injuries as a result of his living conditions and that he was not afforded constitutionally adequate medical care for the injuries. Deliberate indifference to a prisoner's serious medical needs is an actionable Eighth Amendment violation under §1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976).

Dr. Anthony Chambers treated Plaintiff when he was housed at Yazoo FCC and reviewed Plaintiff's medical records for the pertinent period of time [29-6]. His affidavit confirms that Plaintiff suffered from chronic dermatitis, associated with bacteria, not mold exposure. He also noted that Plaintiff had a history of chronic allergic rhinitis, treated with allergy medication, as early as October 2009. This rhinitis was not associated with mold exposure or a fungal infection. Plaintiff also complained of eye irritation and swelling, Dr. Chambers confirmed that these were caused by chronic chalazions (cysts under the eye lid), and associated with bacteria and not mold exposure or fungal infection.

None of the ailments Plaintiff was treated for was caused by mold or fungi, according to Dr. Chambers, but by bacteria and allergies. He suffered from allergies prior to the issues with Yazoo FCC. Plaintiff also asserted that he should have been taken to an

15

infectious diseases specialist. However, case law from the Fifth Circuit confirms that Plaintiff is not entitled to his *choice* of medical treatments. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). There is no requirement under the law that inmates be provided with specific treatments, and this Court does not ordinarily substitute its own opinion for the physicians' medical judgment. Plaintiff has offered only his speculative opinion and criticism of Dr. Chambers's qualifications [56, pp. 19-23], rather than competent medical evidence in rebuttal. He has failed to raise an issue of material fact in this regard. Defendants also cite numerous cases wherein courts found that sinus congestion, headaches, and eye irritation, allegedly cause by mold and mildew exposure, only constitute *de minimus* harm. *See* cases cited on page 2 of the Reply [58].

None of these individual Defendants may be held responsible for Plaintiff's medical care, and Plaintiff does not deny that he was regularly treated for his ailments at the FCC clinic. No liability can be assigned to these Defendants regarding medical care.

The individual Defendants raise the defense of qualified immunity. They are entitled to qualified immunity in this case "insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). The immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 457 U.S. 335, 341 (1986). Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise

to establish a claim, then the defendant[s] [are] entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1995)(citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)). The undersigned finds that Plaintiff's *Bivens'* claims are not cognizable as constitutional claims, so the Court need not reach the question of whether Defendants are entitled to immunity. *Id.*

The undersigned has carefully considered Plaintiff's allegations and supporting exhibits, as well as the supporting affidavits supplied by the Defendants, and the applicable law, and finds that Plaintiff did not suffer a denial of his Constitutional rights in relation to his conditions of confinement.

**B.    Plaintiff's Request for Process on Unserved Defendants and Plaintiff's Request for Default**

Plaintiff has moved the Court to allow process to be served on the individual Defendants named by him but not heretofore served. Because the analysis set forth herein would also apply to the unserved Defendants, service of process would be futile.

Plaintiff has filed a Request for Default [42] and, in response, the United States has filed a Motion to Strike Plaintiff's Request for Default [47]. The undersigned finds that the Government's response to the Complaint was timely, and the request for default should be denied. Further, Rule 55(d) of the Federal Rules of Civil Procedure provides that a claimant must establish a claim to relief by satisfactory evidence before any default judgment could be entered. Plaintiff has not done so, and his request for default should be stricken.

## III. CONCLUSION

For the reasons discussed in this Report and Recommendation, the undersigned recommends that Plaintiff's Motion for Temporary Restraining Order [26] be denied. Plaintiff is no longer housed at FCC.  Plaintiff's Request for Default [42] should be denied, and the United States of America's Motion to Strike Plaintiff's Request for Default [47] should be granted.  Defendants' Amended Motion to Dismiss or in the Alternative, for Summary Judgment [49 & 51] should be granted, and the constitutional claims set forth in the Complaint should be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636, *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 14th day of August, 2015.

    /s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE